Alan D. Scheinkman, Esq. Informal Opinion No. 99-05 County Attorney County of Westchester Michaelian Office Bldg., Room 600 148 Martine Avenue White Plains, N Y 10601
Dear Mr. Scheinkman:
You have asked whether Westchester County may require public schools to comply with certain requirements of the Westchester County Sanitary Code ("Code") when they construct, modify or operate boilers to heat school buildings. The provisions in issue concern the protection of air quality within the County. You assert that school buildings are subject to the Code and that the boilers were not approved and operated under permits as required by the County's regulations. The Scarsdale Union Free School District contends that its schools are not subject to the local regulations.
You have provided us with relevant provisions of the Code. The Code defines "air contamination source" to include any apparatus capable of causing emission of contaminants to the outdoor atmosphere. Westchester County Sanitary Code, Art XIII, § 873.1301(4). This definition encompasses boilers used to heat buildings. The Code further provides that no person may construct an air contamination source without first submitting plans and specifications to the County and then receiving a permit. Id., § 873.1303(1). A certificate to operate the air contamination source is also required. Id., § 873.1306(1). An application for a certificate must include a written statement from a professional engineer certifying that the air contamination source has been constructed in accordance with the approved permit and the plans and specifications submitted with the permit application. Id., § 873.1306(2)(a). A certificate is issued for a period of time specified in regulations promulgated by the County Commissioner of Health and may be renewed periodically. Id., § 873.1306(3).
In prior opinions, we have concluded that the provisions of the Education Law leave localities without authority to regulate school construction. Op Atty Gen (Inf) No. 98-1; 83-34. In our 1983 opinion, we reasoned that the Education Law reserves to the State power over the construction of school buildings and that the State's power has been delegated to local school boards subject to regulation by the Commissioner of Education. Op Atty Gen (Inf) No. 83-34. We noted that school construction is rigidly controlled by safety standards mandated by the State. Id.
Our opinion relied on Matter of Board of Education v. City of Buffalo,32 A.D.2d 98, 100 (4th Dept 1969) where the court held that the City had no authority to exercise control over school construction through its building code. It stated:
 Of certainty, the city possesses the general power to adopt ordinances regulating the construction of buildings so long as any such regulation bears a reasonable relationship to public health, safety and the general welfare . . ., but the exercise of the police power to locally legislate such enactments is limited by constitutional provisions and the general laws of the State. . . . Of compelling concern to a determination of these rights and limitations are those provisions of the Constitution . . . and the Education Law . . . which unqualifiedly have reserved to the State the power over the construction of school buildings. . . . 32A.D.2d at 100 (citations omitted).
In our 1998 opinion, we used the same analysis to find that the State was responsible for enforcing the State Uniform Fire Prevention and Building Code ("Uniform Code") with respect to school buildings. We found that the City of Niagara Falls could not enforce a local building code regarding construction of a school building to be owned by a private developer and leased to a school district. We also concluded that the City was without authority to inspect the construction of the proposed school facility. Op Atty Gen (Inf) No. 98-1.
The provisions of the Education Law relied on in our prior opinions are expansive. Education Law § 408(1) provides that no school building may be built, purchased, repaired, enlarged or remodeled at an expense of more than $100,000 and that no advertisement for bids for the execution of plans and specifications for such work may be placed, until the plans and specifications have been submitted to, and approved by, the Commissioner of Education. This section also requires that the plans and specifications show in detail the ventilation, heating and lighting of such buildings.1 The Commissioner "shall not approve the plans . . . unless the same shall provide for heating, ventilation, lighting, sanitation, storm drainage and health, fire and accident protection adequate to maintain healthful, safe and comfortable conditions therein. . . ." Id., § 408(2). Existing school buildings must comply with health and safety regulations adopted by the Commissioner. Significantly, all school buildings, except those in city school districts of cities having 125,000 or more inhabitants, must comply with regulations adopted by the Commissioner for the purpose of insuring the health and safety of pupils in relation to proper heating, lighting, ventilation, sanitation and health, fire and accident protection. Id., § 409(1).
The Commissioner's regulations regarding school building construction are published at 8 NYCRR part 155. They provide that an architect or licensed engineer must certify that plans and specifications submitted to the Commissioner for review conform with the Uniform Code and the State Energy Conservation Construction Code. 8 NYCRR § 155.2(a)(4). Pivotal to the inquiry at hand is the regulation providing that "[p]lans andspecifications for portions of facilities which require approval by otherdepartments of the State shall be approved by the appropriate agencieshaving jurisdiction as a condition of commissioner's approval of plansand specifications. . . ." (Emphasis supplied) Id., § 155.2(a)(2). Upon approval of the plans, the Commissioner will issue a building permit, subject to the requirement that the project is properly supervised by a licensed architect or engineer during construction. Id., § 155.2(a)(5). When the project is complete, the architect or engineer must certify to the Commissioner that the project was constructed in accord with the Uniform Code, the Commissioner's regulations and the approved plans and specifications. Id., § 155.2(a)(6).
Thus, as highlighted above, approval of plans and specifications by the Commissioner is contingent upon approval by any "departments of the State" with jurisdiction. The State Air Pollution Control Act, which is contained in article 19 of the Environmental Conservation Law, vests the Department of Environmental Conservation with authority to regulate air quality. Environmental Conservation Law § 19-0301. The school district advances the argument that under the Commissioner's regulations, which make the Commissioner's approval subject to approval by other departments with jurisdiction, only the State has jurisdiction to regulate a potential air pollution source in a school building. But the County's view is that article 19 of the Environmental Conservation Law specifically preserves municipal regulation of air quality, including Westchester County's air quality regulations. The Environmental Conservation Law states that
 [a]ny local laws, ordinances or regulations of any governing body of a county, city, town or village which are not inconsistent with this article or with any code, rule or regulation which shall be promulgated pursuant to this article shall not be superseded by it, and nothing in this article or in any code, rule or regulation which shall be promulgated pursuant to this article shall preclude the right of any governing body of a county, city, town or village to adopt local laws, ordinances or regulations which are not inconsistent with this article. . . . Any local laws, ordinances or regulations of a county, city, town or village which comply with at least the minimum applicable requirements set forth in any code, rule or regulation promulgated pursuant to this article shall be deemed consistent with this article or with any such code, rule or regulation. Id., § 19-0709.
The County believes that as long as the County code provisions regarding air quality are not inconsistent with State regulations, they will govern.
Therefore, the question presented is whether a local air quality law, which is consistent with the provisions of article 19 of the Environmental Conservation Law, applies to school buildings, equipment and facilities. As quoted above, the Commissioner of Education's regulations provide that parts of a school building, which require approval by other State departments, must be approved by those departments as a condition of the Commissioner's approval of the plans and specifications for the building. 8 NYCRR § 155.2(a)(2). We believe the intent of this provision, with respect to air quality, is to subject facilities and equipment in school buildings that are potential air contamination sources to review only by any State agency with jurisdiction and not by municipalities. Thus, in the case of a school boiler, as a condition of approval of plans and specifications by the Commissioner of Education, the State Department of Environmental Conservation would exercise any applicable powers of review and approval under article 19 of the Environmental Conservation Law.2
We base this conclusion on several factors. Jurisdiction to review design and construction of school buildings and facilities is specifically granted to local authorities in some cases. See, 8 NYCRR § 155.2(b), (c). These are narrow and specifically drafted exceptions to the broad review powers of the Commissioner of Education, which are described above. No such exception applies in this case. The regulation under review specifically grants approval power to "departments of the State . . . having jurisdiction." 8 NYCRR § 155.2(a)(2). Consistent with the regulatory scheme, this provision should be applied literally and should not be read to incorporate other provisions of State law that preserve local authority, like the Air Pollution Control Act. The regulation means what it says — if any State department has jurisdiction over school buildings and facilities, the Education Commissioner's approval is conditioned upon that department's approval.
Also, application of local air quality regulations would subject school buildings to different standards of review throughout the State. This would contrast sharply with the Commissioner's regulations subjecting school design and construction to review under the Uniform Fire Prevention and Building Code rather than local building and fire codes that otherwise would apply in many municipalities throughout the State. Executive Law § 379. We see no basis for a departure from the general regulatory scheme governing design and construction of school buildings and facilities.
The interpretation asserted by the County also would cause practical problems. The Commissioner of Education could be placed in the difficult position of having to determine whether local air pollution regulations apply. The Commissioner could be faced with competing claims as to whether local regulations comply with minimum requirements of State law and, therefore, are not inconsistent with State requirements (Environmental Conservation Law § 19-0709). State law, however, provides no mechanism for making this determination. We also note that the boundaries of some school districts overlap municipal boundaries. If local regulations were to apply, different air quality standards could apply to different facilities in the same school district. Facility planning by local school districts would be difficult under these circumstances.
In Matter of Board of Education v. City of Buffalo, 32 A.D.2d at 100, the court described the allocation of authority over school construction in the context of a claim of jurisdiction by a local government. While State law governing building and fire codes and school construction have been revised since the time of this decision, the court's opinion, in our view, continues to describe accurately the allocation of authority to regulate school matters. "[T]he Constitution . . . and the Education Law . . . unqualifiedly have reserved to the State the power over the construction of school buildings. . . . Since the State has reserved unto itself the control over and the authority to regulate all school matters . . . [and has specifically surrendered a portion of its sovereign power to school districts], it follows that a school district should be and is immune from" attempted local regulation.
For these reasons, the Education Department's regulation, requiring approval of plans and specifications by the appropriate State agencies with jurisdiction as a condition of approval by the Commissioner, should be construed according to its plain terms. Thus, plans and specifications for heating equipment and facilities are subject to review by the Department of Environmental Conservation in accordance with its jurisdiction under article 19 of the Environmental Conservation Law. Westchester County's air quality regulations are not applicable.
The Attorney General renders formal opinions only to officers and departments of State government. This perforce is an informal and unofficial expression of the views of this office.
Very truly yours,
JAMES D. COLE, Assistant Attorney General
In Charge of Opinions